Caruthers, J.,
delivered the opinion of the Court.
On 29th April, 1851, John L. Jetton made his will, disposing of all his property to his wife, children and *231 grand-cbildren. He gave to Ms wife, one-third of bis land for life, and one-tentb of “all bis slaves and other personal property,” after tbe payment of debts and expenses. Item 3. “ After tbe payment of debts and expenses aforesaid, and tbe taking out one-tentb for my widow, tbe residue of said slaves, and other personal property, monies, &c,” I direct to be divided into nine equal parts; one part of which I give to my son Lewis, one part to tbe children of Mary Graham, one part to Jane Barr, one part to Charlotte Bryant, “ and so on to each of bis daughters, nine in number.” He limits tbe estates of bis daughters to their natural lives, to their separate use; and then to their children, in remainder. He died in 1854; his will was proven and recorded without contest. After the execution of this will, the testator made several deeds of gift to a part of his children, and his widow, the defendant. On the 19th August, 1853, he made a deed of gift to his wife for life; and then, to all her children, one negro woman and child; and on the same day, he gave by deed to a trustee, for the benefit and separate use of his daughter, Francis L. Burke, a negro man; , and at the same time, and in the same way, a negro man was given to his daughter, Jane Barr. On the 25th August, 1853, he gave a negro boy to his son Lewis, and on the 29th, he gave to a trustee, for the use and benefit of his daughter, Martha A. Sawer, a lot in Pulaski, and a negro man, with the same limitations and restrictions.
These deeds of gift were all regularly proven and recorded. This bill was filed Sept., 1856, by the children and legatees, not thus advanced; for the purpose of setting aside all said deeds of gift, upon the ground *232 of the mental incapacity of the donor, and undue influence on the part of his wife: and if this cannot be done, they pray that. the several gifts may' be held to satisfy .the legacies of defendants by way of ademption. Upon the first question we have no difficulty. The old man was very intemperate and aged, but had sufficient capacity to make a binding contract at the time these deeds were made. Such is the opinion of the witnesses to the deeds, although one of them, who was draftsman, was led to doubt upon that subject by some interviews, a month or more afterwards, yet, at the time of .the transaction, he has no doubt. The proof falls short entirely, of shewing that degree of mental unsoundness or imbecility, that would invalidate the gifts. But it is insisted, that if he were not of unsound, mind, yet his intellect was so enfeebled by long continued inebriety, that he was easily influenced by his wife, and that she, against his will, caused him to make these donations by the exercise of an absolute dominion over, his will. As an evidence of this, it is said that she procured, by her dictation and power over him, a remainder interest, to be vested in an illegitimate child of hers, born before his marriage with her, jointly with her children by him, in the two slaves given to her for life. He had taken this child with her, and raised it in his house with his other children, and it is not unnatural that he should freely yield to her wishes in giving to it a small pittance of his estate. Whether this child will get any thing under the deed, is a question not now to be decided, and does not affect the argument. There is evidence, that for several of the last years of his life, embracing the tim.e of these gifts, she managed *233 most of bis business, and that . be deferred to ber in many things. But tbis was rendered necessary by bis intemperate babits, and was a prudent delegation of authority, rather than an evidence of either a want of sense, or submission to unclue influence. He sometimes said be was in tormént, &c., when be was drunk. It was very natural be should feel ’ that way, when under the dominion of liquor; and that she should “torment” him about bis self-destroying babits, was to be expected, in view of the destruction of health and happiness, which was the inevitable consequence of his ruinous course. But it by no means follows, as a necessary consequence, that the fact that she vexed or tormented him, would» augment her influence. His remarks about not being able to do as he pleased, or at liberty to invite his friends to dinner, &c., are all attributable to the same cause, and have very little weight in establishing this point, for which they are adduced in evidence. In all this, we find nothing to authorize the conclusion, (or at least not sufficient for that purpose,) that he was unduly influenced by her to make the deeds of gift in question, or that there was any fraud practiced upon him by his wife, or any body else. He deliberately made the arrangement with his attorney to write them, and gave every evidence of a free and- settled purpose in doing what he did. The deeds of gift were, therefore, valid and binding, and vested good titles in the donees.
2. The second ground assumed by the complainants is, that the gifts, if good, operated as an ademption of the legacies in the will, to the extent at least, of the value of the property, and that in the division of the property under the will, the respective donees must be *234 made to account for it. This is a more difficult question, and must be decided by. reference to tbe authorities. The general rule on this subject is, that where a parent, or one standing in loco parentis, gives a legacy to a child, and afterwards advances a portion to that child, it will be an ademption or satisfaction of the legacy, to the extent of the value of the portion, unless a contrary intent appears; 2 Williams on Ex.,' 1143, and subse■quent pages; 2 Story’s Eq., sec. 1111. But the rule has several qualifications and exceptions. It is founded on the presumption that a bequest by -the father is intended as a portion to the child, and so of the after «gift, and the presumption will be, that a double portion was not intended, where nothing else appears, and therefore, it will be taken that the gift was intended as a satisfaction of the legacy, when it is of equal or greater value, and if less, pro tanto. Koper on Leg., 370, 374) 2 Williams on Ex., 1143. The word “ademption,” ,is synonymous, with satisfaction, when applied to specific legacies. In that case, the disposition of the thing given before the death of the testator, is a complete extinction of the legacy, and the intention of the testator in such cases is immaterial, because there is nothing, at the time the will takes effect, for it to operate upon. Roper, 329. But in respect to general legacies, the question is one of intention, and' this intention will be presumed, as we have said, in all cases of legacies, and subsequent gifts, by a parent or one standing in, or occupying the place of parent, unless that presumption is rebutted. Such is the general rule. But this presumption of ademption will not prevail: 1st. Where the testamentary portion and subsequent advance *235 ment are not of the same nature. 2d. Where the latter depends on a contingency, and tbe former is certain. 3d. When either is in lieu of, or a compensation for an interest to which the child is entitled'; or 4th. Where the bequest is of a residue or part of a residue. Williams, 1144, 5; Roper, at page 877, states that another exception to the general rule is, where the bequest is of an “uncertain amount.” It has, therefore, been determined more than once,” he says, “that a devise of a residue, or of part of a residue to a child, is not adeemed by a subsequent gift upon the legatees marriage.” Though, sir, W. Grant intimated a doubt as to the correctness of this opinion, in 15 Ves., 513, as the author states, yet it is considered well settled as the law, when not controlled by special circumstances. In Farnham vs. Philips; 2 Atk., 216, Lord Hardwicke said “there was no case where the 'devise had been of a residue, that was uncertain, and that at the testator’s death, might be more or less, in which the gift of a subsequent portion had been held an ademption.” Where a testator directed a debt of 100' pounds to be paid out of an estate, and the residue divided between his wife and children, and afterwards gave one of his daughters a thousand pounds, it was held that this - did not operate as an ademption of her testamentary share of the residue. This was the case of Farnham vs. Philips, above cited. The application of this doctrine to the case before us, produces a result that we would rather avoid, if we could do so, upon any principle settled by authority. It must result in giving the defendants the benefit of the will, as well as the deeds of gift. The provision for them under the will, is, that they are each to have one-ninth *236 of the residue, of his slaves, and other personal property and money,” after the payment of debts, expenses, and the one-tenth to the widow. The testamentary portions or legacies, must be fluctuating and uncertain, or in the language of the boohs, they may “be more or less, something, or nothing,” at the death of the testator and settlement of the estate. In answer to the seeming injustice of this doctrine, it may be said, that it is the right of every man to give as a bounty to his children, or others, in such proportions as he chooses, to some more and others less. Where he intends or desires equality, or to make gifts in his lifetime operate in the ademption or satisfaction of general legacies, it is easy to express such purpose. Where he fails to do so, the rules of law must prevail without regard to the consequences. This doctrine of ademption does not apply to real estate, nor to legacies and gifts to others than children, or those who stand in that relation, in cases of general legacies. This distinction rests upon artificial reasons, the justice and propriety of which are not very clear, nor the reasons on which it is founded approved. But that branch of the doctrine having no ajiplication to the ease before us, need not be discussed, but left for a case to which it applies. The decree will be reversed, and the bill dismissed, as to this branch of the case, but remanded for further proceedings, as to other matters connected with the settlement of the estate.